# UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Edward Scott Flinn, | : |
| | : |
| **Plaintiff,** | : Civil Action No. |
| | : |
| v. | : |
| | : |
| Experian Information Solutions, Inc., | : |
| | : |
| **Defendant.** | : |

## COMPLAINT AND JURY DEMAND

### Preliminary Statement

1.      This is an action for damages brought by an individual consumer against the Defendant (named below) for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA").

### Jurisdiction and Venue

2.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p, and 28 U.S.C. §1331, 1337.

3.      Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

### Parties

4.      Plaintiff Edward Scott Flinn ("Mr. Flinn" or "Plaintiff") is an adult individual who resides in La Porte, TX.

5.      Defendant Experian Information Solutions, Inc ("Experian") is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania, with principal place of business located at 701 Experian Pkwy, Allen, TX 75013. At times EX is referred to as the "Credit Reporting Agency

Defendant" or the "CRA Defendant".

## Facts

### Purpose of the FCRA

6.      Understanding the dire consequences of inaccurate credit reporting, Congress enacted the FCRA.  One of the primary purposes of the FCRA is to require CRAs to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7.      The preservation of one's good name and reputation is also a foundational principle of the FCRA:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982) (quoting 116 cong. Rec. 36570 (1970)).

8.      Thus, in order to further its objectives, embedded within the FCRA is the requirement that CRAs conduct a reasonable investigation to determine whether information

2

disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted.

9.      Here, despite Mr. Flinn's numerous disputes, Defendant failed to conduct reasonable investigations of the inaccurate reporting of Plaintiff's credit information and continued to include derogatory inaccurate information within his credit reports.

**Facts**

**Background**

10.      In or about January 31, 2026, Mr. Flinn was approved for a credit card with GBank Financial Holdings Inc. ("GBank").

11.      However, within approximately one day of his approval, GBank closed his account.

12.      Mr. Flinn did not understand why his GBank account was closed and called GBank for an explanation but was unable to reach a customer representative.

13.      By letter dated February 27, 2026 (the "GBank Closing Letter"), GBank sent a letter to Mr. Flinn stating that his account was closed because GBank identified "potential identity theft and/or fraudulent activities". The GBank Closing Letter also stated that the "current outstanding balance is $0.00".

14.      Mr. Flinn never used the GBank account.

15.      Further, based on there being no balance at the time the GBank account was closed, the card was never used by anyone, including any potential fraudster.

16.      As explained further below, even though the GBank account was closed with no

outstanding balance and no transaction history, Experian inaccurately reported Mr. Flinn's account with derogatory credit information.

17.     Mr. Flinn disputed the inaccurate information with Experian, but Defendant failed to correct the inaccurate information and Experian continued to report that the GBank account was in collections.

18.     This derogatory information is not accurate, misleading, and is contradicted by the information supplied by Mr. Flinn, the GBank Closing Letter, and additional GBank account information reported by Experian.

19.     For instance, Experian reported that the GBank account had a $0 balance and had a highest historical balance of $0.  In other words, the GBank account was never used.

20.     Experian further reported that the GBank account was opened on January 31, 2026.

21.     Accordingly, it would make little sense for an account that was opened at that time, that was never used, to then be in collections after less than a month.  Such reporting would be, at least, false, misleading and inaccurate.

22.     Because of this derogatory information, Mr. Flinn could not proceed with the refinancing of his home.

### Mr. Flinn's Four Disputes with Experian

23.     On or about February 19, 2026, Mr. Flinn called Experian and disputed the GBank account. During the call, Mr. Flinn had explained that the account should be reported as "closed" and not "open" since GBank had closed the account the day after it was opened. Mr. Flinn provided a detailed explanation as to why the information being reported was inaccurate, false and misleading.

24.     Pursuant to the obligations under the FCRA, Experian was supposed to provide the

dispute to GBank to investigate.

25.    By correspondence dated March 13, 2026, Experian responded by claiming that the inaccurately reported GBank account was verified and updated. Instead of reporting the GBank account status as closed, Experian had changed the status of the GBank account from "Open/Never late" to "Collection Account" and added a collection notation for February 2026 in the payment history section of the account.

26.    On or about March 13, 2026, Mr. Flinn called Experian and disputed the collection information that was added to the GBank account.   Mr. Flinn again explained that the GBank account was closed within a day or so of it being opened and informed the representative that the account had never been in collections and had never even been used.

27.    By correspondence dated March 17, 2026, Experian responded by claiming that the inaccurately reported GBank account was verified as accurate and updated. The account status was updated from "Collection account" to "Closed", however, the payment history continued to reflect that the account was in "collection" for February 2026.

28.    On or about March 17, 2026, Mr. Flinn again disputed the inaccurate reporting with Experian. Mr. Flinn had disputed the collection information included within the payment history reported for the GBank account, and again explained to the Experian representative, among other things, that the collection information for February 2026 was not accurate because the account had never even been used, there was never an outstanding balance, and it would not be accurate to report that it was in collections at any point, especially in February 2026.  As a part of the dispute, Mr. Flinn provided Experian with the GBank Closing Letter confirming that the account was closed with a $0.00 balance in February 2026.

29.    By correspondence dated March 23, 2026, Experian responded by claiming that the

inaccurately reported GBank account was verified as accurate and the collection information remained within the GBank account.

30.    On or about March 24, 2026, Mr. Flinn again disputed the inaccurate reporting with Experian. The dispute included detailed explanations as to why the information being reported was inaccurate, false and misleading. Mr. Flinn again disputed the collection information included within the GBank account and again informed a representative for Experian that the account had never been late, should not have been in collections, and had never even been used.  Mr. Flinn also provided Experian with documentation to support his dispute. The documentation included a detailed written explanation as to why the information being reported was inaccurate, false and misleading, the GBank Closing Letter confirming that the account was closed with a $0.00 balance, his driver's license and a recent utility bill as proof of address.

31.    By correspondence dated April 2, 2026, Experian responded by claiming that the inaccurately reported GBank account was verified and the inaccurate reporting continued.

32.    Mr. Flinn takes significant pride in his credit, and was distraught, confused and upset by the failure of Experian to remove the inaccurate credit information included within his credit report despite the documentation he submitted.

### Experian's Failure to Conduct Reasonable Investigations

33.    Mr. Flinn's disputes triggered obligations under the FCRA for Experian (Section 1681i(a)) to conduct reasonable investigations.

34.    This investigative requirement further illustrates and reinforces Congress' findings of the importance of accurate consumer credit reporting.  Unfortunately, however, when conducting an 'investigation' CRAs choose speed over accuracy.

35.    CRAs like Experian simply accept as true whatever representation is made by a

6

furnisher without questioning any of the results, or conducting a true independent investigation. Accordingly, CRAs often simply ignore documentation provided to them by consumers that is intended to assist in resolving a disputed inaccuracy.

36.    In other words, no true investigation is performed by CRAs other than a perfunctory data match of information. See e.g., Robertson v. J.C. Penney Co., 2008 WL 623397, at *8 (S.D. Miss. Mar. 4, 2008) ("There appears to have been no investigation of the disputed status of the claim at all"); Scharf v. Trans Union, LLC, 2015 WL 6387501 (E.D. Mich. Oct. 22, 2015), reconsideration denied, 2015 WL 7016331 (E.D. Mich. Nov. 12, 2015) (granting summary judgment to identity theft victim where the furnisher merely reviewed its file to determine whether the loan was in default); Marchisio v. Carrington Mortg. Servs., LLC, 919 F.3d 1288, 1303 (11th Cir. 2019) ("…Defendant made no correction nor any effort to insure that the pertinent databases revealed the existence of the settlement and the fact that no debt was owed by Plaintiffs. Meaning that when Plaintiffs took the predictable next step of disputing this debt with the credit reporting agencies, the outcome of the investigation by Defendant's employee was also quite predictable: the employee would incorrectly verify the existence of a continuing debt.")

37.    Unfortunately, this situation is no different.

38.    Mr. Flinn provided with his disputes documentation confirming that the GBank account had no balance and was never used.  Additionally, any reasonable inquiry into this matter would have resulted in the finding that the additional information included within the GBank account supported Mr. Flinn's position, as the GBank account included information stating that it had a historical highest balance of $0 and was opened on January 31, 2026.  It is plainly false, misleading and inaccurate to report that an account, which has never been used, is in collections less than a month after its opening.

39.     If any reasonable investigation were conducted, the materials submitted by Mr. Flinn were read, and Experian's full reporting of the GBank account was reviewed, the GBank account would have been corrected.

40.     The Defendant either did not engage in any investigation when they were informed of the inaccurate reporting, or (alternatively) did not engage in a reasonable investigation.

41.     The Defendant failed to institute or adhere to policies and procedures that could have prevented the reporting of the inaccurate information.

42.     The Defendant knew or should have known that its actions violated the FCRA. Additionally, Defendant could have taken the steps necessary to bring its agents' actions within compliance of the statutes but neglected to do so and failed to adequately review those actions to ensure compliance with said laws.

43.     Plaintiff's credit reports and file have been obtained from the CRA Defendant and have been reviewed by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving credit offers and opportunities, known and unknown.

44.     As a result of the Defendant's violations of the law, Mr. Flinn suffered interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, fear, worry, anxiety, and embarrassment attendant to his disputes and disbelief by Defendant of his assertions.

### Count One – Violations of the FCRA
**Plaintiff v. Experian**

45.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

46.    At all times pertinent hereto, Experian is a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

47.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

48.    At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

49.    Experian has violated numerous provisions of the FCRA for its improper actions, including but not limited to Sections 1681e(b) and 1681i(a) of the FCRA.  Defendant willfully and negligently violated the FCRA and is liable for damages to Plaintiff pursuant to Section 1681n and 1681o of the FCRA.

50.    The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendant is liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## JURY TRIAL DEMAND

51.    Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendant, based on the following requested relief:

    a.    Actual damages;

    b.    Statutory damages;

    c.    Punitive damages;

9

d.   Costs and reasonable attorneys' fees; and

e.   Such other relief as may be necessary, just and proper.


**THE KIM LAW FIRM, LLC**

BY:     */s/ Richard H. Kim*
        Richard Kim, Esquire
        1515 Market St., Suite 1200
        Philadelphia, PA 19102
        Ph. 855-996-6342/Fax 855-235-5855
        rkim@thekimlawfirmllc.com

        *Attorney for Plaintiff Edward Scott Flinn*

Date: April 7, 2026